Lee A. Cirsch (SBN 227668)
Michael Akselrud (SBN 285033)
THE LANIER LAW FIRM, P.C.
2049 Century Park East, Suite 1940
Los Angeles, California 90067
Phone: (310) 277-5100
Fax:  (310) 277-5103
lee.cirsch@lanierlawfirm.com
michael.akselrud@lanierlawfirm.com

W. Mark Lanier
Catherine Heacox
THE LANIER LAW FIRM, PLLC
126 East 56th Street, 6th Floor
New York, NY 10022
Phone: (212) 421-2800
Fax:  (212) 421-2878
wml@lanierlawfirm.com
catherine.heacox@lanierlawfirm.com

Attorneys for Plaintiff
RONALD COUWENHOVEN

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| RONALD COUWENHOVEN, <br><br> Plaintiff, <br><br> vs. <br><br> ABBOTT LABORATORIES, INC., ABBVIE, INC., ACTAVIS, INC., JANE DOE DISTRIBUTORS (1-50), JOHN DOE DRUG COMPANY DEFENDANTS (1-50), JANE DOE DRUG DISTRIBUTOR DEFENDANTS (1-50), JIM DOE DOE HEALTH CARE PROVIDERS (1-50), and JILL DOE (1-50), <br><br> Defendants. | Case No. 5:14-cv-667 JGB-DTB <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMPLAINT FOR DAMAGES

- 1 -

Plaintiff RONALD COUWENHOVEN ("Plaintiff"), files this Complaint against the Defendants,  ABBOTT LABORATORIES, INC., ABBVIE, INC., ACTAVIS, INC., and DOES (all defendants collectively hereinafter referred to as the "Defendants") alleging as follows:

## NATURE OF ACTION

1.     This is an action for damages suffered by Plaintiff as a direct and proximate result of Defendants' wrongful conduct in connection with the development, design, testing, labeling, packaging, promoting, advertising, marketing, distribution, and selling of Defendants' prescription medication Androgel and Androderm.

2.     This case involves the prescription drugs Androgel and Androderm ("testosterone"), which are manufactured, sold, distributed and promoted by Defendants as testosterone replacement therapies.

3.     Defendants misrepresented that testosterone is a safe and effective treatment for hypogonadism or "low testosterone," when in fact these drugs cause serious medical problems, including life threatening cardiac events, strokes, and thrombolytic events.

4.     Defendants engaged in aggressive, award-winning direct-to-consumer and physician marketing and advertising campaigns for testosterone.  Further, Defendants engaged in an aggressive unbranded "disease awareness" campaign to alert men that they might be suffering from "low T."

5.     As a result, diagnoses of Low T and prescriptions for testosterone replacement therapies have increased exponentially.  For example:

    a.     Defendants ABBOTT LABORATORIES, INC. ("ABBOTT") and ABBVIE, INC.'s sales of AndroGel have increased to over $1.37 billion per year; and

b.  Defendant ACTAVIS, INC.'s sales of Androderm have increased to over $69 million per year;

6.  However, consumers of testosterone were misled as to the drug's safety and efficacy, and as a result have suffered injuries including life-threatening cardiac events, strokes, and thrombolytic events.

## THE PARTIES

7.  Plaintiff RONALD COUWENHOVEN ("COUWENHOVEN") is a citizen of the State of California, and a resident of Mira Loma, California, county of Riverside.

8.  Upon information and belief, Defendant ABBOTT, a manufacturer of AndroGel, is a corporation organized and existing under the laws of Illinois and maintains its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064. ABBOTT has conducted business and derived substantial revenue from within the State of California.

9.  Upon information and belief, Defendant ABBVIE, INC. , a manufacturer of AndroGel, is a corporation organized and existing under the laws of Delaware with its principal place of business at 1 North Waukegan Road, North Chicago, Illinois 60064. ABBVIE, INC. has conducted business and derived substantial revenue from within the State of California.

10.  By way of background, Unimed Pharmaceuticals Inc. originally developed AndroGel and sought FDA approval in 1999. Before the drug was approved by the FDA in 2000, Solvay Pharmaceuticals Inc. acquired Unimed Pharmaceuticals, Inc. and subsequently brought AndroGel to market. In 2010, Defendant ABBOTT acquired Solvay's pharmaceutical division, which included AndroGel. Then, in 2013, ABOTT created AbbVie, a company composed of Abbott's former proprietary pharmaceutical business, which included AndroGel.

11.  Upon information and belief, Defendant ACTAVIS, INC., a manufacturer of Androderm, is a corporation organized and existing under the laws

COMPLAINT FOR DAMAGES

1    of Nevada with its principal place of business at Morris Corporate Center III, 400

2    Interpace Parkway, Parsippany, New Jersey, 07054. ACTAVIS, INC. has

3    conducted business and derived substantial revenue from within the State of

4    California.

5        12.    By way of background, TheraTech, Inc. originally developed

6    Androderm, which was approved by the FDA on 9/29/1995. Watson acquired

7    TheraTech in January 1999 and continued to manufacture and distribute

8    Androderm. Watson then acquired Actavis on October 31, 2012, and subsequently

9    changed its corporate name to Actavis, Inc. on January 23, 2013.

10       13.    Defendant John Doe Manufacturer Defendants are defendants who are

11   or have been involved in the manufacture, distribution, marketing, sale and

12   labeling of testosterone products but are not yet known by Plaintiff(s).

13       14.    At all times relevant herein, Defendants tested, studied, researched,

14   designed, formulated, manufactured, inspected, labeled, packaged, promoted,

15   advertised, marketed, distributed, and sold the prescription drugs Androgel and

16   Androderm in interstate commerce and throughout the State of California. At all

17   times relevant herein, Defendants were registered to do business in the State of

18   California.

19

20                      **JURISDICTION AND VENUE**

21       15.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because

22   Plaintiff and Defendants are citizens of different States and the amount in

23   controversy exceeds $75,000 exclusive of interest and costs.

24       16.    Venue in this action properly lies in this judicial district pursuant to 28

25   U.S.C. § 1391(a), as a substantial number of the events, actions or omissions

26   giving rise to Plaintiff's claims occurred in this district. At all times material

27   hereto, Defendants conducted substantial business in this district.

28   ///

## **TESTOSTERONE THERAPY AND ITS SIDE EFFECTS**

17.     Hypogonadism is a specific condition of the sex glands that may involve the diminished production or nonproduction of testosterone in males.

18.     Testosterone is a primary androgenic hormone responsible for normal growth, development of the male sex organs, and maintenance of secondary sex characteristics.

19.     The hormone plays a role in sperm production, fat distribution, maintenance of muscle strength and mass, and sex drive.

20.     In men, testosterone levels normally begin a gradual decline after the age of thirty.

21.     The average testosterone levels for most men range from 300 to 1,000 nanograms per deciliter of blood. Testosterone levels can fluctuate greatly depending on many factors, including sleep, time of day, and medication. Resultantly, many men who fall into the hypogonadal range one day will have normal testosterone levels the next.

### **Androgel**

22.     The Food and Drug Administration approved AndroGel 1% on February 28, 2000, and then approved AndroGel 1.62% on April 29, 2011.  After FDA approval, AndroGel was widely advertised and marketed as a safe and effective testosterone replacement therapy.

23.     AndroGel is a hydroalcoholic gel containing testosterone that is applied to the shoulders and upper arms, and enters the body through transdermal absorption.

24.     AndroGel may produce undesirable side effects to patients who use the drug, including, but not limited to, myocardial infarction, stroke, and death.

25.     In some patient populations, AndroGel use may increase the incidence of myocardial infarctions and death by more than 500%.

///

### Androderm

26.     The Food and Drug Administration approved Androderm on September 29, 1995. After FDA approval, Androderm was widely advertised and marketed as a safe and effective testosterone replacement therapy.

27.     Androderm is a transdermal patch containing testosterone and is applied to the back, abdomen, upper arms and thighs.

28.     Androderm may produce undesirable side effects to patients who use the drug, including, but not limited to, myocardial infarction, stroke, and death.

29.     In some patient populations, Androderm use may increase the incidence of myocardial infarctions and death by more than 500%.

30.     In 2010, a New England Journal of Medicine Study entitled "Adverse Events Associated with Testosterone Administration" was discontinued after an exceedingly high number of men suffered adverse events.

31.     In November 2013, a JAMA study was released entitled "Association of Testosterone Therapy with Mortality, Myocardial Infarction, and Stroke in Men with Low Testosterone Levels," which indicated that testosterone therapy raised the risk of death, heart attack and stroke by approximately 30%.

32.     On January 29, 2014, a study was released in PLOS ONE entitled "Increased Risk of Non-Fatal Myocardial Infarction Following Testosterone Therapy Prescription in Men," which indicated that testosterone use doubled the risk of heart attacks in men over sixty-five years old and men younger than sixty-five with a previous diagnosis of heart disease.

33.     There have been a number of studies concluding that testosterone therapy causes a sudden increase in hematocrit, hemoglobin and estradiol, and associating its use with an increased risk of heart attacks and strokes.

34.     In addition to the above, Defendants' testosterone product has been linked to several severe and life changing medical disorders in the user of the product and in those who come into physical contact with the user or the user's

1  unwashed clothes. Patients taking an aforementioned testosterone product may

2  experience enlarged prostates and increased serum prostate-specific antigen levels.

3      35.    Secondary exposure to testosterone can cause side effects in others.

4  In 2009, the FDA issued a black box warning for testosterone prescriptions,

5  advising patients of reported virilization in children who were secondarily exposed

6  to the gel. Testosterone may also cause physical changes in women exposed to the

7  drug and cause fetal damage with pregnant women who come into secondary

8  contact with testosterone.

9      36.    Defendants' marketing strategy has been to aggressively market and

10  sell their products by misleading potential users about the prevalence and

11  symptoms of low testosterone and by failing to protect users from serious dangers

12  that Defendants knew or should have known result from use of its products.

13      37.    Defendants successfully marketed testosterone by undertaking a

14  "disease awareness" marketing campaigns.  These campaigns sought to create a

15  consumer perception that low testosterone is prevalent among U.S. men and that

16  symptoms previously associated with other physical and mental conditions, such as

17  aging, stress, depression, and lethargy were actually attributable to "Low-T."

18      38.    Defendant coordinated massive advertising campaigns designed to

19  convince men that they suffered from low testosterone. Defendant orchestrated

20  national disease awareness media blitzes that purported to educate male consumers

21  about the signs of low testosterone.  The marketing campaigns included

22  promotional literature placed in healthcare providers' offices and distributed to

23  potential testosterone users, and online media.

24      39.    The advertisements suggest that various symptoms often associated

25  with other conditions may be caused by low testosterone and encourage men to

26  discuss testosterone replacement therapy with their doctors if they experienced any

27  of the "symptoms" of low testosterone. These "symptoms" include listlessness,

28

increased body fat, and moodiness—all general symptoms that are often a result of aging, weight gain, or lifestyle, rather than low testosterone.

40.     Defendants' advertising programs sought to create the image and belief by consumers and their physicians that the use of testosterone was a safe method of alleviating their symptoms, had few side effects and would not interfere with their daily lives, despite that Defendants knew or should have known these to be false and without any support from their own studies or widely accepted medical literature.

41.     Defendants purposefully downplayed, understated and outright ignored the health hazards and risks associated with using testosterone. Defendants deceived potential testosterone users by relaying positive information through the press, including testimonials from retired professional athletes, and manipulating hypogonadism statistics to suggest widespread disease prevalence, while downplaying known adverse and serious health effects.

42.     Defendants concealed material relevant information from potential testosterone users and minimized user and prescriber concern regarding the safety of testosterone replacement therapy.

43.     In particular, Defendants fail to mention any potential cardiac or stroke side effects in their commercials, online and print advertisements, and falsely represent that Defendants adequately tested testosterone for all likely side effects.

44.     As a result of Defendants' advertising and marketing, and representations about their products, men in the United States pervasively seek out prescriptions for testosterone. If Plaintiff in this action had known the risks and dangers associated with testosterone, Plaintiff would not have taken testosterone and consequently would not have been subject to its serious side effects.

45.     Defendants also sought to convince primary care physicians that low testosterone levels are widely under-diagnosed, and that conditions associated with normal aging could be caused by low testosterone levels.

46.     A study published in the Journal of the American Medical Association ("JAMA") in August 2013 entitled "Trends in Androgen Prescribing in the United States, 2001-2011" indicated that many men who get testosterone prescriptions have no evidence of hypogonadism. For example, one third of men prescribed testosterone had a diagnosis of fatigue, and one quarter of men did not even have their testosterone levels tested before they received a testosterone prescription.

47     While running disease awareness campaigns, Defendants promoted their testosterone product as an easy to use topical testosterone replacement therapy. Defendants contrast their products' at-home topical application with less convenient prescription testosterone injections, which require frequent doctor visits.

48.     Defendants convinced millions of men to discuss testosterone replacement therapy with their doctors, and consumers and their physicians relied on Defendants' promises of safety.  Although prescription testosterone replacement therapy has been available for years, it was not until Defendants' massive marketing campaign that millions of men, who were never been prescribed testosterone, flocked to their doctors and pharmacies.

49.     What consumers received, however, were not safe drugs, but products that cause life-threatening problems, including strokes, heart attacks, and death.

50.     Defendants successfully created a robust and previously nonexistent market for their drugs. Defendants spent millions of dollars promoting their products.  Defendants also spent millions on their unbranded marketing including commercials and websites recommending that men have regular checkups with their physicians and five regular tests done: tests for cholesterol, blood pressure, blood sugar, prostate-specific antigen, and testosterone.

COMPLAINT FOR DAMAGES

51.     Defendants' advertising resulted in an exponential increase of sales. Sales of replacement therapies have more than doubled since 2006, and are expected to triple to $5 billion by 2017, according to forecasts by Global Industry Analysts. Shannon Pettypiece, Are Testosterone Drugs the Next Viagra?, May 10, 2012, Bloomberg Businessweek, available at: http://www.businessweek.com/articles/2012-05-10/are-testosterone-drugs-the-next-viagra

52.     The Defendants' marketing program sought to create the image and belief by consumers and physicians that low testosterone affected a large number of men in the United States and that the use of testosterone is safe for human use, despite that Defendants knew these to be false and  without any support from their own studies or widely accepted medical literature.

53.     Defendants engaged in aggressive, award-winning direct-to-consumer and physician marketing and advertising campaigns for testosterone. Further, Defendants engaged in an aggressive unbranded "disease awareness" campaign to alert men that they might be suffering from "low T."

## SPECIFIC FACTUAL ALLEGATIONS

54.     In or about 2007, Plaintiff RONALD COUWENHOVEN was sixty two years of age when he was prescribed and began Androgel and/or Androderm for symptoms he attributed to low testosterone after viewing Defendants' advertisements. Plaintiff started taking Androgel and/or Androderm in or about September 2007 and stopped taking it in in or about 2014.

55.     Neither Plaintiff, nor his physician, received an adequate warning from Defendants about the risk of persistent and/or permanent injury after discontinuation of treatment.

56.     Plaintiff was very healthy and had no history of blood clots prior to taking testosterone. In keeping with his healthy and proactive lifestyle, Plaintiff agreed to initiate testosterone treatment. He relied on claims made by Defendants

1   that testosterone had been clinically shown to safely and effectively raise

2   testosterone levels.

3       57.    Plaintiff was diagnosed with Deep Vein Thrombosis on or about April

4   5, 2012. As a result, Plaintiff was prescribed blood thinners, etc.

5

6   **CLAIMS FOR RELIEF**

7   **FIRST CLAIM FOR RELIEF**

8   **Strict Liability – Failure to Warn**

9       58.    Plaintiff incorporates by reference each and every paragraph of this

10  Complaint as if fully set forth herein and further alleges as follows:

11      59.    The testosterone products manufactured and/or supplied by

12  Defendants were defective due to inadequate warnings or instructions because

13  Defendants knew or should have known that the products created significant risks

14  of serious bodily harm to consumers, and they failed to adequately warn consumers

15  and/or their health care providers of such risks. The testosterone products

16  manufactured and/or supplied by Defendants were defective due to inadequate

17  post-marketing warnings or instructions because, after Defendants knew or should

18  have known of the risk of serious bodily harm from the use of testosterone,

19  Defendants failed to provide an adequate warning to consumers and/or their health

20  care providers of the product.

21      60.    As a direct and proximate result of Plaintiff's reasonably anticipated

22  use of testosterone as manufactured, designed, sold, supplied, marketed and/or

23  introduced into the stream of commerce by Defendants, Plaintiff suffered serious

24  injury, harm, damages, economic and non-economic loss and will continue to

25  suffer such harm, damages and losses in the future.

26  ///

27  ///

28  ///

COMPLAINT FOR DAMAGES

- 11 -

## SECOND CLAIM FOR RELIEF

### Negligence

61.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows: At all times herein mentioned, Defendants had a duty to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, distribute, prepare for use, sell, prescribe and adequately warn of the risks and dangers of testosterone.

62.     At all times herein mentioned, Defendants negligently and carelessly manufactured, designed, formulated, distributed, compounded, produced, processed, assembled, inspected, distributed, marketed, labeled, packaged, prepared for use and sold testosterone and failed to adequately test and warn of the risks and dangers of testosterone.

63.     Despite the fact that Defendants knew or should have known that testosterone caused unreasonable, dangerous side effects, Defendants continued to market testosterone to consumers, including Plaintiff, when there were safer alternative methods of treating loss of energy, libido erectile dysfunction, depression, loss of muscle mass and other conditions that the testosterone advertising claims are caused by low testosterone.

64.     Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

65.     As a direct and proximate cause of Defendants' negligence, Plaintiff suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

///

///

///

**THIRD CLAIM FOR RELIEF**

**Breach of Implied Warranty**

66.   Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

67.   Prior to the time that the aforementioned products were used by Plaintiff, Defendants impliedly warranted to Plaintiff and Plaintiff's agents and physicians that testosterone was of merchantable quality and safe and fit for the use for which it was intended.

68.   Plaintiff was and is unskilled in the research, design and manufacture of the products and reasonably relied entirely on the skill, judgment and implied warranty of the Defendants in using testosterone.

69.   Testosterone was neither safe for its intended use nor of merchantable quality, as warranted by Defendants, in that testosterone has dangerous propensities and will cause severe injuries to users when used as intended.

70.   As a result of the abovementioned breach of implied warranties by Defendants, Plaintiff suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

**FOURTH CLAIM FOR RELIEF**

**Breach of Express Warranty**

71.   Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

72.   At all times mentioned, Defendants expressly represented and warranted to Plaintiff and Plaintiff's agents and physicians, by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that testosterone is safe,

1  effective, fit and proper for its intended use. Plaintiff purchased testosterone
2  relying upon these warranties.

3      73.    In utilizing testosterone, Plaintiff relied on the skill, judgment,
4  representations, and foregoing express warranties of Defendants. These warranties
5  and representations were false in that testosterone is unsafe and unfit for its
6  intended uses.

7      74.    As a result of the abovementioned breach of express warranties by
8  Defendants, Plaintiff suffered serious injury, harm, damages, economic and non-
9  economic loss and will continue to suffer such harm, damages and losses in the
10  future.

11              **FIFTH CLAIM FOR RELIEF**
12                    **Fraud**

13      75.    Plaintiff incorporates by reference each and every paragraph of this
14  Complaint as if fully set forth herein and further alleges as follows:

15      76.    Defendants, from the time they first tested, studied, researched,
16  evaluated, endorsed, manufactured, marketed and distributed testosterone, and up
17  to the present, willfully deceived Plaintiff, Plaintiff's physicians and the general
18  public, by concealing from them the true facts concerning testosterone, which the
19  Defendants had a duty to disclose.

20      77.    At all times herein mentioned, Defendants conducted a sales and
21  marketing campaign to promote the sale of testosterone and willfully deceived
22  Plaintiff, Plaintiff's physicians and the general public as to the benefits, health
23  risks and consequences of using testosterone. Defendants knew of the foregoing,
24  that testosterone is not safe, fit and effective for human consumption, that using
25  testosterone is hazardous to health, and that testosterone has a serious propensity to
26  cause serious injuries to its users including, but not limited to, the injuries Plaintiff
27  suffered.

28

78.    Defendants concealed and suppressed the true facts concerning testosterone with the intent to defraud Plaintiff, in that Defendants knew that Plaintiff physicians would not prescribe testosterone, and Plaintiff would not have used testosterone, if they were aware of the true facts concerning its dangers.

79.    As a result of Defendants' fraudulent and deceitful conduct, Plaintiff suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

## SIXTH CLAIM FOR RELIEF
### Negligent Misrepresentation

80.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

81.    From the time testosterone was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendants made misrepresentations to Plaintiff, Plaintiff's physicians and the general public including, but not limited to, the misrepresentation that testosterone was safe, fit and effective for human consumption.  At all times mentioned, Defendants conducted sales and marketing campaigns to promote the sale of testosterone and willfully deceived Plaintiff, Plaintiff's physicians and the general public as to the health risks and consequences of the use of the abovementioned products.

82.    The Defendants made the foregoing representation without any reasonable ground for believing them to be true. These representations were made directly by Defendants, by sales representatives and other authorized agents of Defendants, and in publications and other written materials directed to physicians, medical patients and the public.

83.    The representations by the Defendants were in fact false, in that testosterone is not safe, fit and effective for human consumption, using testosterone

COMPLAINT FOR DAMAGES

- 15 -

1   is hazardous to health, and testosterone has a serious propensity to cause serious

2   injuries to users, including but not limited to the injuries suffered by Plaintiff.

3     84   The foregoing representations by Defendants were made with the

4   intention of inducing reliance and the prescription, purchase and use of

5   testosterone.

6     85.   In reliance of the misrepresentations by the Defendants, Plaintiff was

7   induced to purchase and use testosterone.  If Plaintiff had known of the true facts

8   and the facts concealed by the Defendants, Plaintiff would not have used

9   testosterone. The reliance of Plaintiff upon Defendants' misrepresentations was

10   justified because such misrepresentations were made and conducted by individuals

11   and entities that were in a position to know the true facts.

12     86.   As a result of the foregoing negligent misrepresentations by

13   Defendants, Plaintiff suffered serious injury, harm, damages, economic and non-

14   economic loss and will continue to suffer such harm, damages and losses in the

15   future.

16        **SEVENTH CLAIM FOR RELIEF**

17         **Fraudulent Concealment**

18     87.   Plaintiff incorporates by reference each and every paragraph of this

19   Complaint as if fully set forth herein and further alleges as follows:

20     88.   Any applicable statutes of limitations have been tolled by the knowing

21   and active concealment and denial of material facts known by each Defendant

22   when it had a duty to disclose those facts.  Each Defendant has kept Plaintiff

23   ignorant of vital information essential to his pursuit of these claims, without any

24   fault or lack of diligence on Plaintiff's part, for the purpose of obtaining delay on

25   Plaintiff's part in filing a complaint on the causes of action. Each Defendants'

26   fraudulent concealment did result in such delay.  Plaintiff could not reasonably

27   have discovered these claims until shortly before filing his original complaint.

28

89.     Each Defendant was under a continuing duty to disclose the true character, quality, and nature of its drug that Plaintiff utilized, but instead concealed them. As a result, each Defendant is estopped from relying on any statute of limitations defense.

## EIGHTH CLAIM FOR RELIEF

### Violation of Unfair and Deceptive Trade Practices Act

90.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

91.     Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, development, manufacture, promotion, and sale of testosterone.

92.     Had the Defendants not engaged in the deceptive conduct described herein, Plaintiff would not have purchased and/or paid for testosterone, and would not have incurred related medical costs.  Specifically, Plaintiff, his physician, and Plaintiff's physician's staff were misled by the deceptive conduct described herein.

93.     Defendants' deceptive, unconscionable, and/or fraudulent representations and material omissions to patients, physicians and consumers, including Plaintiff, constituted unfair and deceptive acts and trade practices in violation of the state consumer protection statute listed below.

94.     Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, substantial sums of money from Plaintiff for testosterone that they would not have paid had Defendants not engaged in unfair and deceptive conduct.

95.     Plaintiff was injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at patients, physicians and consumers was to create a demand for and sell testosterone. Each aspect of Defendants' conduct combined to artificially create sales of testosterone.

96.     The medical community relied upon Defendants' misrepresentations and omissions in determining to use testosterone.

97.     By reason of the unlawful acts engaged in by Defendants, Plaintiff has suffered ascertainable loss and damages.

98.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff was damaged by paying in whole or in part for testosterone.

99.     As a direct and proximate result of Defendants' violations of unfair trade practice acts, Plaintiff has sustained economic losses and other damages for which he is entitled to statutory and compensatory damages, and declaratory relief, in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF
### Negligent Infliction of Emotional Distress

100.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

101.    Defendants carelessly and negligently manufactured, marketed, and sold testosterone to Plaintiff, carelessly and negligently concealed defects from Plaintiff, and carelessly and negligently misrepresented the quality and safety of testosterone. Defendants should have realized that such conduct involved an unreasonable risk of causing emotional distress to reasonable persons, that might, in turn, result in illness or bodily harm.

102.    Defendants owed a duty to treating physicians and Plaintiff to accurately and truthfully represent the risks of testosterone. Defendants breached that duty by misrepresenting and/or failing to adequately warn of the risks of testosterone – effects of which Defendants knew or in the exercise of diligence should have known – to the treating physicians and Plaintiffs.

103.    As a direct and proximate result of Defendants' wrongful conduct and breach of duty, Plaintiff has sustained and will continue to sustain severe emotional

distress either due to physical injury or a rational fear of physical injury and is
entitled to recovery of damages in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF

### Loss of Consortium/Per Quod Claim

104.   Plaintiff incorporates by reference each and every paragraph of this
Complaint as if fully set forth herein and further alleges as follows:

105.   By reason of the foregoing, Plaintiff's spouse has necessarily paid and
has become liable to pay for medical aid, treatment, attendance and medications,
and will necessarily incur further expenses of a similar nature in the future.

106.   By reason of the foregoing, Plaintiff's spouse has been caused
presently and in the future the loss of her husband's companionship, services and
society.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for relief as follows:

(a)   Compensatory damages, in excess of the amount required for federal
diversity jurisdiction, and in an amount to fully compensate Plaintiff for all of his
injuries and damages, both past and present;

(b)   Special damages, in excess of the amount required for federal
diversity jurisdiction and in an amount to fully compensate Plaintiff for all of his
injuries and damages, both past and present, including but not limited to, past and
future medical expenses, costs for past and future rehabilitation and/or home health
care, lost income, permanent disability, including permanent instability and loss of
balance, and pain and suffering.

(c)   Punitive and/or exemplary damages for the wanton, willful,
fraudulent, reckless acts of Defendant who demonstrated a complete disregard and
reckless indifference for the safety and welfare of the general public and to

COMPLAINT FOR DAMAGES

1  Plaintiff in an amount sufficient to punish Defendant and deter future similar

2  conduct

3          (d)      Double or triple damages as allowed by law;

4          (e)      Attorneys' fees, expenses, and costs of this action;

5          (f)      Pre-judgment and post-judgment interest in the maximum amount

6  allowed by law; and

7          (g)      Such further relief as this Court deems necessary, just, and proper.

8

9

10  Dated: April 4, 2014                    THE LANIER LAW FIRM

11

12

13                                          Lee A. Cirsch
                                            Michael Akselrud
14                                          2049 Century Park East, Suite 1940
                                            Los Angeles, California 90067
15                                          Phone: (310) 277-5100
                                            Fax:  (310) 277-5103
16                                          lee.cirsch@lanierlawfirm.com
                                            michael.akselrud@lanierlawfirm.com
17

18                                          W. Mark Lanier
19                                          Catherine Heacox
                                            126 East 56th Street, 6th Floor
20                                          New York, NY 10022
                                            Phone: (212) 421-2800
21                                          Fax:  (212) 421-2878
22                                          wml@lanierlawfirm.com
                                            catherine.heacox@lanierlawfirm.com
23

24                                          Attorneys for Plaintiff
                                            RONALD COUWENHOVEN
25

26

27

28


                              COMPLAINT FOR DAMAGES

## **JURY DEMAND**

Plaintiff RONALD COUWENHOVEN hereby demands a trial by jury.

THE LANIER LAW FIRM

_(signature)_

Lee A. Cirsch
Michael Akselrud
2049 Century Park East, Suite 1940
Los Angeles, California 90067
Phone: (310) 277-5100
Fax:  (310) 277-5103
lee.cirsch@lanierlawfirm.com
michael.akselrud@lanierlawfirm.com

W. Mark Lanier
Catherine Heacox
126 East 56th Street, 6th Floor
New York, NY 10022
Phone: (212) 421-2800
Fax:  (212) 421-2878
wml@lanierlawfirm.com
catherine.heacox@lanierlawfirm.com

Attorneys for Plaintiff
RONALD COUWENHOVEN

COMPLAINT FOR DAMAGES

- 21 -

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| RONALD COUWENHOVEN, an individual. | ABBOTT LABORATORIES, INC, et al. |

| (b) County of Residence of First Listed Plaintiff   Riverside | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|
| Lee A. Cirsch (SBN 227668), Michael A. Akselrud (SBN 285033) THE LANIER LAW FIRM, PC, 2049 Century Park East, Suite 1940 Phone: (310) 277-5100; Fax: (310) 277-5103 lee.cirsch@lanierlawfirm.com, michael.akselrud@lanierlawfirm.com | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1. U.S. Government Plaintiff
- ☐ 2. U.S. Government Defendant
- ☐ 3. Federal Question (U.S. Government Not a Party)
- ☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. 1338

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **TORTS PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: | 5:14-cv-667 |
|---|---|---|

CV-71 (11/13)                   CIVIL COVER SHEET                   Page 1 of 3

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes  [X] No<br><br>If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Los Angeles | Western |
| | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF?<br><br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br><br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| [ ] Yes  [X] No | [ ] Los Angeles | [ ] Los Angeles | Western |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | [ ] Riverside or San Bernardino | Eastern |
| | [ ] Other | [ ] Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | [ ] | [ ] | [ ] | [X] | [ ] | [ ] |
| Indicate the location in which a majority of defendants reside: | [ ] | [ ] | [ ] | [ ] | [X] | [ ] |
| Indicate the location in which a majority of claims arose: | [ ] | [ ] | [ ] | [X] | [ ] | [ ] |

**C.1. Is either of the following true? If so, check the one that applies:**

[ ] 2 or more answers in Column C

[ ] only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

[X] 2 or more answers in Column D

[ ] only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Eastern Division |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** /S/ Michael A. Akselrud     DATE: 4/4/2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Jesus G. Bernal_____ and to
Magistrate Judge _____David T. Bristow_____ .

The case number on all documents filed with the Court should read as follows:

### 5:14-cv-00667 JGB-DTBx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the assigned Magistrate Judge has been designated to hear discovery-related motions. All discovery-related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____April 4, 2014_____
Date

By  SBOURGEOIS_____
Deputy Clerk

## ATTENTION

*A copy of this Notice must be served on all parties served with the Summons and Complaint (or, in cases removed from state court, on all parties served with the Notice of Removal) by the party who filed the Complaint (or Notice of Removal).*

CV-18 (04/14)                    NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES